Margaret Vizard, Appellee, v. Walter J. Cummings and Daniel C. Green, Receivers, et al., Appellants.

## Gen. No. 41,979.

Opinion filed April 20, 1943.

FRANK L. KRIETE, WARNER H. ROBINSON and ARTHUR J. DONOVAN, all of Chicago, for certain appellants; JOHN R. GUILLIAMS, of Chicago, of counsel.

W. HAROLD RUTHERFORD, for certain other appellant; RICHARD E. KEOGH, of Chicago, of counsel.

ROYAL W. IRWIN, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

A suit brought to recover for personal injuries sustained by plaintiff on July 30, 1937, while walking on the street to make a transfer from a Chicago avenue street car to a Grand avenue street car. A jury returned a verdict against both defendants and assessed plaintiff's damages in the sum of $5,000. Both defendants appeal from a judgment entered upon the verdict.

The complaint charges as negligence "(a) that defendants carelessly and negligently caused, permitted and allowed divers bricks, stones, pieces of concrete and asphalt to be removed from said highway, thereby rendering the same rough and uneven for travel and (b) that the defendants carelessly and negligently failed to provide and keep the surface of said highway at a place where the plaintiff was permitted to dismount from said street car in reasonably safe condition and repair."

The accident happened about one o'clock p. m. on July 30, 1937. "It was a beautiful, warm day." The City of Chicago, at the time, was repaving the south side of Chicago avenue and the work was being done by its contractor, White Paving Company, defendant. The Surface Lines had nothing to do with the work and no part of the street car right of way was interfered with in the course of the work, which was started in April, and extended from a point five blocks east of Grand avenue to a point three blocks west of Grand avenue. The old brick pavement on the south side of Chicago avenue was entirely torn out. Later a concrete foundation was laid and left to dry, or cure, before the asphalt surface could be laid. A row of brick which was adjacent to the street car rail was not disturbed but two rows of brick were laid outside of that row. When the two adjacent rows of brick were laid

the top surface of the brick was two and three-quarters inches above the concrete, according to the testimony of the engineer who was in charge of the work. A man whose gas station was located at the intersection testified that the edge of the brick was four inches above the concrete. An asphalt surface three inches thick was to be laid over the concrete after it had cured. After the two rows of brick were laid the street was cleaned up; all of the debris was removed. On the day of the accident plaintiff, then about seventy-four years of age, was on her way to the Navy Pier, accompanied by Mrs. Decker, who was about the same age. They took an eastbound Chicago avenue street car at Austin avenue and were given transfers, as they intended to transfer from the Chicago avenue street car to a Grand avenue street car, which would take them to the Navy Pier. Plaintiff testified that they were going to take the Grand avenue car on the corner of Grand avenue and Chicago, "right at Chicago avenue." Plaintiff had transferred at that point once before early in the spring of the same year, when "the street was perfectly normal." When the Chicago avenue street car arrived at Grand avenue it stopped on the west side of the intersection at the traffic light; the traffic light was red against the street car. The Chicago avenue street car remained standing still at that place until after the accident. When the street car stopped plaintiff proceeded to alight from the front end of the car. The door at the front end was open and "it was then that I could see that the street was under repair;" "I saw that it was torn up just as I was getting off. I noticed it when I started to step down into this light sand, then I noticed the street was torn up there." Plaintiff testified: "I got off the street car, stepped down on this concrete and walked a couple of steps over to get in front of the car, to cross over to the Grand avenue car. I stepped with one foot, the right foot, on the pavement

of the street car, and was lifting up the left foot when my heel caught on the brick of the pavement and threw me forward on my left side. . . . There were some blocks raised up there. I could see them. After I saw those blocks, I just stepped, put my right foot upon the pavement there in front of the street car. I was walking very slowly because Mrs. Decker couldn't walk fast and so she could catch up with me. I looked down. I could see what I was stepping on. I put one foot down and brought the left foot up. I raised my left foot up and my heel caught. My heel caught on the edge of this granite block. Evidently I hadn't raised my heel quite high enough. You wouldn't raise your left foot up as high as you do your right foot when you are stepping there. When my left heel caught in the edge of that row of stones is when I lost my balance and fell forward on my left side. . . . I was taking my time, looking down where I was walking. The street car was standing still all the time;'' that ''the edge of those stones was a foot or a foot and a half away from the track, I should think, so far as I can remember. There were about three rows of blocks there. When you are hurt like that, you don't remember. As I was approaching there, I saw it. I saw the condition.'' Plaintiff also testified that when she started to cross she did not look back of her because she was looking down, ''picking my way over the street.''

A number of important points, several of them meritorious, are raised by defendants in support of their contention that the judgment should be reversed, but in our view of this appeal it is only necessary to consider one point made by defendants. Defendants contend, and strenuously argue, that plaintiff's own testimony shows conclusively that her injuries were due to her failure to exercise due care at the time and place in question and that therefore the trial court erred in refusing to direct a verdict in favor of both defendants at the close of all of the evidence, and fur-

ther erred in denying the motion of both defendants for judgment notwithstanding the verdict. After a careful examination of the evidence bearing upon the care exercised by plaintiff at the time and place in question, we are satisfied that the contention as to the conduct of plaintiff is a meritorious one. When plaintiff boarded the street car she received a transfer which entitled her to change cars at any transfer point on the line that she might elect. She chose to transfer at Grand avenue. This ·is not a case of a passenger alighting or transferring in the dark. It was midday, of a beautiful, warm day. Plaintiff looked and saw the condition of the street before she alighted, and she stepped from the steps of the car onto the concrete in perfect safety, so that the place where the street car permitted her to alight caused her no injury. The concrete had a solid footing and was clear of all debris or loose material. After plaintiff alighted in safety she plainly saw the situation, the condition of the street and the row of brick against which she struck her left heel. She walked a few steps east on the concrete, passed the front end of the street car and then turned north so as to cross over to the Grand avenue car. She testified that she walked slowly, "picking her way;" that, "as I was approaching there, I saw it. I saw the condition;" that she saw the blocks; "I could see what I was stepping on. I put one foot down and brought the left foot up. I raised my left foot up and my heel caught . . . on the edge of this granite block. *Evidently I hadn't raised my heel quite high enough.* . . . When my left heel caught in the edge of that row of stones is when I lost my balance and fell forward on my left side." The top of the brick was but a few inches above the concrete. Plaintiff did not claim that she saw any danger in this slight elevation and her testimony shows that she saw the situation plainly and did not hesitate to step up on the brick. She frankly stated that the reason her left heel caught

on the edge of the block was that she had not raised her left heel quite high enough. It seems quite clear that the accident was due solely to the manner in which she stepped with her left foot upon the brick. Plaintiff, alone, controlled the simple matter of lifting her left heel high enough to clear the edge of the brick. In a few words she stated the sole reason for the accident. If plaintiff, when she boarded the street car, had raised her right foot to the step of the car and then raised her left foot in such a manner that her heel caught on the edge of the step and threw her, could it be reasonably argued that her fall was due to any other cause than her own negligence?

Mrs. Decker did not testify. In the light of the testimony of plaintiff, we are forced to the conclusion that at the time and place of the accident she was guilty of contributory negligence as a matter of law.

The judgment of the circuit court of Cook county is reversed.

*Judgment reversed.*

SULLIVAN, P. J. and FRIEND, J., concur.